SYKES v. BOONE.

(Filed March 24, 1903.)

1. TRUSTS—*Parol Trusts—Consideration.*

Where a person takes a deed for property with an agreement that he will, upon the payment of a certain sum, convey the same to a third person a parol trust is created in favor of the latter.

2. FRAUDS, STATUTE OF—*Trusts—Parol Trusts.*

A declaration of trust by a purchaser at the time of the conveyance of the legal title to him, as a condition on which the vendor consents to convey, is not within the statute of frauds.

ACTION by W. R. Sykes against Bessie Boone and W. H. Britton, heard by Judge George H. Brown and a jury, at February Term, 1902, of the Superior Court of NORTHAMPTON County.   From a judgment for the defendants, the plaintiffs appealed.

*Peebles & Harris* and *W. E. Daniel,* for the plaintiff.
*Day & Bell* and *Battle & Mordecai,* for the defendant.

WALKER, J.   The plaintiff in this action sues for the recovery of real property.   The defendant denies his right to recover the possession of the same and pleads a counterclaim, in which she alleges that she applied to Mr. B. B. Winborne, the agent of Miss Vaughan, who was the owner of the tract of land described in the complaint, for the purchase of said land, and Winborne agreed to give her an option to buy the land before he sold it to any one else.

On the 14th October, 1899, the plaintiff applied to Winborne for the purchase of the land and Winborne agreed to sell it to him at the price of $2,000.00, but before the deed was prepared and executed, Winborne notified the plaintiff of his previous promise to the defendant, and that thereupon the plaintiff promised and agreed with Winborne that, if he would let him have the land and the defendant should afterwards want it at the price of $2,000.00, he would either surrender the deed, then about to be executed, to Miss Vaughan and let her convey to the defendant, or he would himself convey directly to the defendant upon payment of $2,000.00.

There was evidence tending to show that the plaintiff had admitted this promise both before and after the execution of the deed, and there was much evidence to corroborate Winborne who testified to the making of the promise.   There was also evidence tending to show that Winborne would not have prepared and delivered the deed if the promise had not been made.

The following issues were submitted to the jury:

1.   Did B. B. Winborne, as agent for Rosa Vaughan, agree with the defendant Bessie Boone to give her the refusal of the purchase of the land described in the complaint, as alleged in the answer?   Yes.

2.   Was the deed from Rosa Vaughan to the plaintiff executed and delivered upon the understanding and agreement upon the part of plaintiff, entered into immediately before

and at time of execution of said deed, that plaintiff would convey said land to defendant Bessie Boone for $2,000.00 if she desired it?    Yes.

3.    Did defendant Bessie Boone decline to take said land at $2,000.00 as alleged by plaintiff?    Ans. No.

4.    Did said Bessie Boone decide to take said land at $2,000.00, and notify plaintiff and said Winborne within a reasonable time as alleged by the defendant?    Yes.

5.    Did said defendant Bessie Boone offer to pay plaintiff said $2,000.00 and interest and expenses as alleged by her? Yes.

6.    What damage if any is plaintiff entitled to recover?

The court charged the jury that before they could answer the second issue "Yes," the defendant must satisfy them by strong, clear and convincing proof, more than a mere preponderance of evidence, that plaintiff's promise to convey the land to defendant was a part of the inducement moving Winborne to execute the deed, and if the jury found that the promise was the inducement for making the deed, they would answer the second issue "Yes".   The court further charged that if it was Winborne's purpose and intention to sell to the plaintiff anyhow and to deliver the deed whether such promise was given or not, and it was not a trust or condition attached to the title, and not intended as such, the jury would answer the second issue "No."   The court further substantially instructed the jury that, if Winborne did not exact the promise from the plaintiff as a condition precedent to the making of the deed, and Winborne did not annex any such condition or trust to the transmission of the title or the delivery of the deed, the jury should answer the second issue "No."

The jury answered the second issue "Yes" and they have thereby found as follows:   That W. R. Sykes made the promise and that it was the inducement for making the deed

and was annexed at the time of preparing and executing the deed, as a condition and trust to the transmission of the legal title.

Why did not the facts thus found create a valid parol trust in favor of the plaintiff which is enforcible in a court of equity? We think they did. It is familiar learning that a trust may be created in any one of the four modes:

1. By transmission of the legal estate, when a simple declaration will raise the use or trust.

2. By a contract based upon *valuable* consideration, to stand seized to the use or in trust for another.

3. By covenant to stand seized to the use of or in trust for another upon *good* consideration.

4. When the court by its decree converts a party into a trustee on the ground of fraud. *Wood v. Cherry,* 73 N. C., 110.

The trust in this case comes within the first class, as a declaration of trust was made at the time of the execution of the deed and the conveyance of the legal estate. A trust when so declared is not within the Statute of Frauds. *Pittman v. Pittman,* 107 N. C., 159; 11 L. R. A., 456. Nor does it require a consideration to support it. If the declaration is made at or before the legal estate passes, it will be valid even in favor of a mere volunteer. *Blackburn v. Blackburn,* 109 N. C., 488; *Pittman v. Pittman,* 107 N. C., 159; 11 L. R. A., 456.

We are unable to distinguish this case in principle from the many cases decided in this court, where purchases have been made at public or judicial sales, and the purchaser who paid the money out of his own funds agreed to hold the land subject to the right of the person, whose land he bought, to have a reconveyance of the legal title upon repayment of his outlay. In all such cases it has been held that there was a valid parol trust created in favor of the former owner of the

land.  *Cobb v. Edwards,* 117 N. C., 244; *Shields v. Whit-aker,* 82 N. C., 516; *Mulholland v. York,* 82 N. C., 510; *Shelton v. Shelton,* 58 N. C., 292.; *Owens v. Williams,* 130 N. C., 165.

It is true that in some of these cases the purchaser acquired the land at an under value because he was known to be buying for the benefit of the defendant in the execution, but if it is necessary that any equitable element should be involved in order to create a valid trust, we have that element is this case, as the jury have necessarily found, under the evidence and the charge of the court, that the plaintiff obtained the deed by reason of his solemn promise and engagement to convey to the defendant upon payment of the purchase money, and that this promise was a condition precedent annexed at the time of the execution of the deed and was what induced Winborne to sell and convey to the plaintiff.  It was substantially therefore a part of the consideration for the conveyance, and it would be unconscionable and against equity for the plaintiff to take advantage of the deed and to insist upon holding the legal title acquired thereunder, and refuse to perform the promise he made in order to procure the execution of the deed.  The case, in this view of it, is quite as strong as those in which this court has frequently interfered in behalf of parties seeking to attach a parol trust to the legal estate and to have it enforced by a conveyance of the same.

The case of *Cloninger v. Summit,* 55 N. C., 513, presents a striking analogy to this case.  In that case the defendant had agreed with the owner of the land, when the latter conveyed the legal title to him, that he would hold it subject to the right of a third party, to whom the owner had theretofore made a bond for title, to have a conveyance of the title upon payment of the amount specified in the bond.  That was held to be a valid parol trust which the court enforced and in its essential features the case is like the one now under decision.

It is true the defendant had by procuring possession of the bond for title induced the owner to convey to him, but in this case the plaintiff obtained the deed and conveyance of the legal title by a promise to hold in trust for Miss Boone, to whom Winborne had previously promised the refusal of the land or an option to buy it. Though there may be a slight distinction between the two cases, we see no legal difference.

"But the language of this Court in the case of *Cousins v. Wall,* 56 N. C., 45, is conclusive against the plaintiff. In that case the owner of the land was under a contract to convey to the plaintiff the land in controversy and, instead of doing so, he conveyed it to the defendant, who paid the purchase money out of his own funds, but at the time of the execution of the deed he agreed to convey to the plaintiff upon payment of the amount of the purchase money.

In commenting upon these facts and after referring approvingly to the case of *Cloninger v. Summit, supra,* Battle, J., for the Court, says: "By paying his money and taking the legal title to himself, defendant held the legal title in trust to secure the repayment of the purchase money, and then in trust for the plaintiff. The defendant never contracted to sell or convey the land, or any interest therein, to plaintiff; for, at the time of the agreement, he had no title or interest in the land, and it was only by the force of the agreement that he was permitted to take the legal title, and by the same act he took it in trust for the plaintiff. It is manifest that the statute of frauds does not apply."

In *Dennison v. Goehring,* 7 Penn., 175; 47 Am. Dec., 505, the conveyance had been made to a person who himself paid the purchase money, but the parol trust was declared for another, who happened, it is true, to be the child of the bargainor. It was held that the trust, though voluntary, was valid and enforcible in equity. The fact that the beneficiary was the child of the bargainor was not at all controlling in

the decision of the case, but the reason of the decision was that the trust, having been declared at the time the legal title passed, and being therefore, an executed or perfected trust, as distinguished from an executory trust, or one arising out of an executory agreement, the court would enforce it even in favor of a volunteer, or without any consideration moving from the beneficiary to support it. In that case, Gibson, C. J., says: "The books are full of decrees in favor of children and volunteers . . . . . . When the legal estate has passed by a conveyance in which a trust is distinctly declared, the trustee will not be allowed to set up want of consideration to defeat it. *James v. Morey*, 2 Cowen (N. Y.), 246; 14 Am. Dec., 506, 507."

It is true that all trusts are in a certain sense executory, that is, the beneficiary is under the necessity of coming into the court and invoking its equitable jurisdiction for the enforcement of the trust, and for this reason Lord Hardwick at one time declared that there was no such distinction as that asserted between executed and executory trusts; but from this position he was forced afterwards to recede and he finally abandoned it. *Excel v. Wallace,* 2 Vesey, Sr., 318; *Bastard v. Proby,* 2 Cox, 8. And now it is held that there never was a time when there was not a substantial difference between executed and executory trusts in this respect, that is, that one is good in favor of a volunteer and the other is not. An executed trust, therefore if declared at the time the legal estate passes under the deed, will be enforced even without a consideration. *Ellison v. Ellison,* 6 Vesey, 656; White & Tudor's L. C., (4 Am. Ed.), 382; Adams Eq., 79; *Read v. Long,* 4 Yerger, 68; *Wyche v. Green,* 16 Ga., 49; *Fletcher v. Fletcher,* 4 Hare, 73.

In *Pittman v. Pittman,* 107 N. C., 163; 11 L. R. A., 456, Shepherd, C. J., gives a very full and accurate statement of the law with reference to such trusts. He says: "Trusts and

uses were raised in the same manner, and if a feoffment was made without consideration, a use resulted to the feoffor, unless the use or trust was declared at the time of the conveyance. Now, it must be observed that no consideration was necessary to a feoffment. The conveyance itself raised the use and separated it from the legal estate. The use so raised would, however, as we have said, in the absence of a consideration, result to the feoffor, unless declared at the time of the feoffment, and this declaration might be voluntarily made by parol, either in favor of the feoffee or a third person. But there was a great difference in this respect between a conveyance which operated by transmitting the possession, and the covenant to stand seized, which had no operation but by the creation of a new use; and as this use was raised by equity, and equity never acts without a consideration, a consideration was always necessary to the transfer of the interest by this conveyance; whereas, in the case of a feoffment or fine, the use arises upon the conveyance itself. . . . . . It seems therefore that at common law, only the solemn conveyance, by livery or record, could raise the use by its own virtue, and dispense with the deed declaring it, as well as the consideration for raising it. Roberts on Fraud, 92. It appears then that at common law no use or trust can be raised in lands without a consideration, except in the single instance of a conveyance operating by transmutation of possession the character of the conveyance alone being sufficient to raise the use, and to dispense with the necessity for a consideration."

When the principles thus laid down by this court are applied to the facts of this case, we do not see why the promise made by the plaintiff to Winborne in behalf of the defendant, at the time the legal title passed to him, was not a valid and enforcible trust. No good reason has been suggested to us

why this case should be excepted from the operation of the principles usually applicable to cases of its kind.

We do not think that the decision in *King v. Kincey,* 36 N. C., 187; 36 Am. Dec., 40, militates against the views we have expressed. The agreement, there, was made at the time of *receiving* the deed and was purely voluntary. The deed was not procured by reason of the promise; indeed, a reconveyance was not contemplated by the parties at the time the deed was executed. Besides, the plaintiff had two years within which to redeem the land and failed to avail himself of the offer of the defendant and the relief seems to have been denied upon that ground.

The assignment of error as to the ruling of the court upon the admissibility of testimony and the refusal to give the plaintiff's first and seventh prayers for instructions involve the same question as the one we have already discussed, and cannot therefore be sustained. We understand that the instruction requested in the plaintiff's fifth prayer was given by the court, or it was at least substantially given to the jury, and that was sufficient.

The sixth prayer was properly refused. The question was whether the trust had been declared at the time the legal title passed to the plaintiff. The promise could have become a part of the consideration even after the terms of the purchase had been agreed upon. It was a superadded consideration, and the jury found, under proper instructions from the court, it was part of the consideration and inducement for making the deed.

We conclude upon a review of all of the authorities that there was a valid trust declared, at the time of the conveyance of the legal estate from Miss Vaughan, in favor of the defendant and she is entitled to have the same enforced by the conveyance to her of the legal title.

The parol trust is enforcible not in the court of honor

alone, as the plaintiff's counsel contended, but in the forum of conscience where right and equity âre administered in accordance with those well established principles which have been found to be best calculated to do justice between the parties, and to compel by legal methods and procedure the fulfillment of solemn engagements.

We believe that the result reached in this case is not only just, but that any other interpretation of the facts of the case, with reference to their legal character and efficacy, would be in contravention rather than in fulfillment of the provisions of the statute, for it has been well said that it is not easy to see how such a trust could be established except by parol evidence, and that if such evidence were not competent "a statute made to prevent frauds would become a most potent instrument whereby to give them success." Bispham Equity, Sec. 95.

The questions as to the tender of the purchase money by the defendant before the suit was brought and as to the costs in the case, have both been settled against the plaintiff. *Cotton Mills v. Abernathy,* 115 N. C., 402; *Martin v. Bank,* 131 N. C., 121.    There is no error in the rulings and judgment of the court below.

*Per Curiam.*    Judgment Affirmed.