W. F. WOLFE AND WIFE, MRS. IDA WOLFE, v. NORTH CAROLINA JOINT STOCK LAND BANK.

(Filed 19 March, 1941.)

1. **Trusts § 1b: Mortgages § 40—**

To create a parol trust there must be an agreement amounting to an undertaking to act as agent for another in the purchase of land, constituting a covenant to stand seized to the use or benefit of such other, but a mere parol agreement to convey land to another raises no trust in the latter's favor and comes within the provisions of the statute of frauds.

2. **Same: Estoppel § 6d—Person signing lease as tenant and thus recognizing title of landlord held estopped to assert parol trust as against landlord.**

Plaintiff alleged that the *cestui que trust* in the deed of trust executed by plaintiff on the *locus in quo*, agreed to purchase at the foreclosure sale for plaintiff's benefit and to reconvey to plaintiff upon certain terms. During conversations with officers of the defendant relative to repurchasing the property plaintiff occupied same as tenant. Defendant consistently refused to convey the property upon the terms that plaintiff alleged it had agreed so to do. Thereafter ejectment proceedings were instituted and plaintiff made no defense therein that he was the equitable owner, and the ejectment action was compromised by agreement under which plaintiff paid the rent and entered into a new rental agreement prepared by plaintiff's attorney in which it was stipulated that plaintiff claimed no interest in the land other than as tenant. *Held:* Plaintiff's conduct was inconsistent with the existence or continuation of his asserted equitable interest in the land and estops him from asserting the alleged parol trust.

3. **Cancellation of Instruments § 2—Evidence held insufficient to show that execution of instrument was procured by fraud.**

Plaintiff instituted this action to establish an alleged parol trust. Defendant asserted as an estoppel a lease agreement executed by plaintiff in which it was stipulated that plaintiff's only interest in the land was that of a tenant. Plaintiff attacked the lease on the ground that its execution

was procured by fraud. The evidence tended to show that the lease agreement was prepared by plaintiff's attorney, that he had opportunity to read it or to have it read to him, and the only representation relied upon was the statement of defendant's agent that the lease agreement was a "plain rental contract." *Held:* Plaintiff is not entitled to avoid the legal effect of the instrument upon mere proof that the agent of defendant informed him that it was a lease agreement.

**4. Same: Mortgages § 40—**

After foreclosure and the purchase of the property by the *cestui* there is no presumption of fraud arising from the relationship between the parties which would vitiate the execution by the former trustor of a lease agreement.

**5. Estoppel § 11c—**

Where plaintiff's own evidence establishes the execution by him of a lease agreement estopping him from asserting an alleged parol trust in the lands, and plaintiff's evidence of fraud in procuring his execution of the lease is wholly insufficient, defendant's motion for judgment as of nonsuit should have been sustained.

APPEAL by defendant from *Carr, J.,* at October Term, 1940, of WAYNE. Reversed.

Civil action to establish a parol trust in land.

In 1925, the plaintiff, W. F. Wolfe (the plaintiff, Ida Wolfe, being joined as wife of the real plaintiff), subdivided his tract of land containing 111 acres into three separate parcels and procured three several loans from the defendant in the total sum of $6,400.00. Each loan was secured by a deed of trust. In 1934, the plaintiff having defaulted in the payment of four semiannual installments and in the payment of the 1932 and 1933 taxes, in addition to certain insurance premiums, his land was advertised under the deeds of trust and sold on 17 March, 1934. At the sale, plaintiff being present, the defendant became the purchaser of each tract and foreclosure deeds were executed accordingly.

The plaintiff offered evidence tending to show that in February, 1934, prior to the foreclosure sale, the vice-president of the defendant company suggested that plaintiff apply to the Federal Land Bank for a loan and stated that the defendant would have the trustee sell the land and that at the sale the bank would bid it off and "he was to let me have it back at what I could borrow from the Federal Land Bank."

The plaintiff made application to the Federal Land Bank and procured a commitment in the sum of $3,200.00. He so advised the defendant and offered to pay the proceeds of such loan for a reconveyance of his land. The defendant refused to accept the same. Plaintiff then procured a commitment from the Federal Land Bank in the sum of $3,500.00. The defendant likewise declined to accept this amount. He was fully advised in August, 1934, that the defendant declined to accept

the amount of the commitment from the Land Bank. "Mr. Smith said he wasn't going to do it and I couldn't make him do it."

During the negotiations for the repurchase or redemption of the land plaintiff and his attorney consulted with the general counsel of the defendant and also with the treasurer. The agent of the Land Bank, accompanied by plaintiff, also conferred with officers of the defendant. In each instance defendant declined to accept the amount of the commitment and to make conveyance.

In the spring of 1934, plaintiff leased the premises in controversy from the defendant agreeing to pay $225.00 rent therefor. It does not appear whether this contract was made before or after the foreclosure. On 17 November, 1934, counsel for plaintiff, at his instance, wrote the defendant as follows:

"My information is that in the above matter your bank foreclosed this property some time ago and now holds title to the same.

"Mr. Wolfe is very desirous of obtaining from Federal Land Bank of Columbia a loan with which to re-purchase this land. I have been negotiating with the Federal Land Bank in regard to this matter since June of this year and have not been able to get as much money as is necessary to complete this loan, however, am hopeful that I can get a loan that will be sufficient to enable him to re-purchase this property. To do this, however, it is necessary that I have a statement from your bank as to the exact amount you will accept for this land provided Mr. Wolfe can re-purchase the same. I would greatly appreciate your furnishing me with such a letter, giving me the maximum time in which to accept your offer and at the same time make your offer as low as you possibly can so that he can work out a proposition with the Federal Land Bank."

Thereafter, the plaintiff having defaulted in the payment of rent, defendant instituted a summary proceeding in ejectment. In this proceeding plaintiff was represented by counsel and the parties entered into an agreement of compromise settlement under the terms of which the plaintiff paid his rent and the defendant agreed to and did enter into a rental agreement for 1935. This contract of rental was prepared by counsel for the plaintiff and contained the following stipulation:

"It is further understood and agreed between the parties that the said party of the first part is seized of the legal title to the lands described in this contract and that the said party of the second part (plaintiff) has no interest in the farm except for the term and duration of this lease."

On 28 September, 1935, plaintiff's counsel, at his instance, again wrote defendant, in part, as follows: "Will you please let me know immediately the price of this farm, together with your best terms; that is, cash payment and purchase money mortgage securing the balance. I would

appreciate this information immediately as Mr. Wolfe is about to obtain assistance to regain this farm and it is necessary that I have the figures at once."

In the fall of 1935 plaintiff instituted an action to establish a parol trust agreement entered into between the defendant and plaintiff prior to the foreclosure sale. Judgment of voluntary nonsuit was entered at the March Term, 1937, and plaintiff brought this action 1 January, 1938, alleging substantially the same cause of action.

The defendant filed answer denying any parol agreement or contract to reconvey and alleged the acts and conduct of the plaintiff, including the rental agreements, as an estoppel. Plaintiff replied thereto alleging that the rental contract entered into in 1935, if executed by him (which was not admitted), was procured by the fraud and misrepresentations of the defendant.

When the cause came on to be tried issues were submitted to and answered by the jury as follows:

"1. Did the North Carolina Joint Stock Land Bank, prior to the foreclosure on March 17, 1934, agree with the plaintiffs that it would buy the lands at the foreclosure sale and hold title to the same to the use and benefit of the plaintiffs, as alleged in the pleadings of the plaintiffs?

"Answer: 'Yes.'

"2. If so, were the plaintiffs ready, willing and able to perform their part of the contract according to its terms within a reasonable time and as agreed, as alleged by the plaintiffs' pleadings?

"Answer: 'Yes.'

"3. Was the contract of rental entered into between the plaintiffs and the defendant dated January 18, 1935, obtained by fraud of the defendant?

"Answer: 'Yes.' "

From judgment on the verdict defendant appealed.

*J. Faison Thomson and Scott B. Berkeley for plaintiffs, appellees.*
*D. H. Bland and J. S. Patterson for defendant, appellant.*

BARNHILL, J. To create a parol trust there must be an agreement amounting to an undertaking to act as agent in the purchase and constituting a covenant to stand seized to the use or benefit of another.

"The jurisdiction to enforce the performance of trusts arises where property has been accepted by one person on terms of using or holding it for the benefit of another." *Reynolds v. Morton,* 205 N. C., 491, 171 S. E., 781; *Shelton v. Shelton,* 58 N. C., 292; *Riggs v. Swann,* 59 N. C., 118; *Lefkowitz v. Silver,* 182 N. C., 339, 109 S. E., 56; *Lutz v. Hoyle,* 167 N. C., 632, 83 S. E., 749; *Wilson v. Jones,* 176 N. C., 205, 97 S. E.,

18; *Boone v. Lee,* 175 N. C., 383, 95 S. E., 659; *Weaver v. Norman,* 193 N. C., 254, 136 S. E., 612; *Mulholland v. York,* 82 N. C., 510; *Rush v. McPherson,* 176 N. C., 562, 97 S. E., 613, and cases cited; *Avery v. Stewart,* 136 N. C., 426, 68 L. R. A., 776.

"A mere parol agreement to convey land to another raises no trust in the latter's favor and comes within the provisions of the statute of frauds." *Avery v. Stewart, supra; Campbell v. Campbell,* 55 N. C., 364.

The theme of the conversation with the vice-president of the defendant related by the plaintiff is that the bank would buy the property at the sale and would reconvey to the plaintiff for the amount procured from the Federal Land Bank. There is, however, other evidence from witnesses for the plaintiff which tends more nearly to establish a parol trust agreement. In any event, the defendant in its brief does not challenge the sufficiency of the evidence for this purpose.

On its motion to nonsuit defendant rests its case upon its plea of estoppel. This plea must be sustained.

Plaintiff, after the sale, in company with a representative of the Land Bank, and later accompanied by his counsel, had conversations with officers of the defendant relative to repurchasing the property. At that time he occupied it as tenant under a rental agreement. Nothing was said in respect to an alleged agreement to reconvey or to purchase for the use and benefit of the plaintiff. At plaintiff's instance his counsel corresponded with the defendant, beginning shortly after the sale. In none of these letters is reference made to any such contract. The plaintiff was merely seeking to repurchase his land and to obtain the best possible price. When ejectment proceedings were instituted in 1934 he made no defense that he was the equitable owner of the property. On the contrary, he paid the rent and entered into a new agreement of rental, stipulating in the contract that he claimed no interest in the land other than as tenant. This conduct of the plaintiff is wholly inconsistent with and in negation of any claim of beneficial interest. At the time he entered into the rental contract for the year 1935 he well knew that defendant had consistently refused to reconvey the property upon the terms plaintiff alleges it had agreed so to do. In the ejectment proceedings it asserted title in itself and claimed the right of possession. With this knowledge and in settlement of the ejectment action he paid the 1934 rent and executed a lease for the premises. Under the decisions of this Court he is now, by his conduct, estopped to assert equitable title to the land. *Hare v. Weil,* 213 N. C., 484, 196 S. E., 869; *Council v. Land Bank,* 213 N. C., 329, 196 S. E., 483; *Bank v. Hardy,* 211 N. C., 459, 190 S. E., 730; *Minton v. Lumber Co.,* 210 N. C., 422, 187 S. E., 568; *Bunn v. Holliday,* 209 N. C., 351, 183 S. E., 278; *Shuford v. Bank,* 207 N. C., 428, 177 S. E., 408.

Speaking directly to the subject, *Winborne, J.,* in *Hare v. Weil, supra,* says: "The language of this agreement is clear and explicit. A reading of it manifests the clear intention of the plaintiffs to recognize the defendants as the landlord, and assume for themselves the role of tenants . . . The execution of this agreement is conduct positive, unequivocal and inconsistent with the claim of title under the alleged parol agreement. It is not in harmony with the existence or continuation of the trust, and manifests conclusively an intention not to rely thereon."

Here, however, plaintiff seeks to avoid the effect of his 1935 lease agreement on the grounds of fraud. The fraud relied upon is neither sufficiently pleaded nor proven. While he testified that "they (the agent of the bank), just asked me to sign my name, said it was a plain rental contract," the fact remains that the lease agreement was prepared by plaintiff's counsel who was present when it was executed. He had full opportunity to read it or to have it read to him by his counsel. It was "a plain rental contract" and the clause in which he stipulated that he claimed no interest in the land was just above his signature. He cannot now avoid the legal effect thereof upon mere proof that the agent of the defendant informed him that it was a lease agreement.

The relationship of the parties was not such as to raise a presumption of fraud. The record discloses that at no time from the foreclosure until plaintiff instituted his action in the fall of 1935 was any mention made of an alleged parol trust agreement. The plaintiff had made repeated efforts to ascertain the terms on which defendant would reconvey and the defendant had consistently and repeatedly declined to sell for the sums offered. If there existed any parol trust agreement plaintiff well knew that defendant was claiming ownership in its own right. The parties were dealing at arms length.

There being no proof of fraud, the effect of the plea of estoppel, on the evidence offered by the plaintiff, was properly presented by the motion for judgment as of nonsuit. *Harrison v. R. R.,* 194 N. C., 656, 140 S. E., 598; *Hare v. Weil, supra.*

The motion for judgment as of nonsuit should have been sustained.

Reversed.