DORETHA BAHADUR AND HUSBAND, JOHN S. BAHADUR v. CHARLES A. McLEAN

No. 6915SC21

(Filed 1 April 1970)

1. Mortgages and Deeds of Trust §§ 34, 40;    Trusts § 19— setting aside trustee's deed — parol trust — agreement to purchase note and extend time for payment — sufficiency of evidence

     In this action to set aside a trustee's deed given on foreclosure of a deed of trust or, in the alternative, to impress a parol trust upon defendant purchaser's title, plaintiff's evidence is insufficient to support a finding that defendant had agreed to purchase the note secured by the deed of trust and to grant plaintiffs additional time to pay their indebtedness.

**2. Mortgages and Deeds of Trust § 34;   Trusts § 13— parol agreement to purchase at foreclosure sale and reconvey to debtor — resulting trust**

A parol agreement to purchase at a foreclosure or judicial sale and hold the title for the debtor, and to reconvey the legal title to the debtor upon repayment of the amount advanced, creates a resulting trust, provided the agreement is made at or before the legal estate passes; such an agreement need not be supported by consideration, but may be enforced against a mere volunteer.

**3. Mortgages and Deeds of Trust § 34;   Trusts § 19— purchase at foreclosure sale — resulting trust — sufficiency of evidence**

In this action to impress a resulting trust on property purchased by defendant upon foreclosure of a deed of trust given by plaintiffs, plaintiffs' evidence is insufficient to support a jury finding that defendant had made an express agreement to acquire and hold title for plaintiffs' benefit as would be required to give rise to a resulting trust.

**4. Mortgages and Deeds of Trust § 34;   Trusts § 13— purchase at foreclosure sale — agreement to give debtors option to repurchase — resulting trust**

Alleged agreement by the purchaser at a foreclosure sale, prior to taking title, to convey to the debtors an option to repurchase the property is insufficient to charge the purchaser as trustee or to impress a trust upon his title.

**5. Mortgages and Deeds of Trust § 34;   Trusts § 13— parol trust — necessary agreement**

To create a parol trust there must be an agreement amounting to an undertaking to act as agent in the purchase and constituting a covenant to stand seized to the use or benefit of another.

APPEAL by plaintiffs from *Thornburg, J.,* July 1968 Session of ALAMANCE Superior Court.

This is a civil action to set aside a trustee's deed given on foreclosure of a deed of trust or, in the alternative, to impress a parol trust upon defendant's title. Defendant is the purchaser at the foreclosure sale. From judgment of nonsuit entered at the close of plaintiffs' evidence, plaintiffs appeal.

*John D. Xanthos for plaintiff appellants.*

*Richard C. Erwin for defendant appellee.*

PARKER, J.

On 13 May 1964 plaintiffs executed a deed of trust conveying their real property in Alamance County to Oliver T. Denning, as trustee, to secure their note in the sum of $3,935.98 payable on 10

April 1965. The note was not paid when due, and in February 1966 the trustee commenced foreclosure proceedings. At the foreclosure sale held on 22 March 1966 defendant made the highest bid in the amount of $6,000.00. Thereafter a sister of the feme plaintiff placed an upset bid, and the trustee resold the property. At the resale, defendant again became the highest bidder with a bid of $10,000.00. Pursuant to the resale the trustee executed the deed to defendant which plaintiffs now seek to set aside.

Plaintiffs do not attack their deed of trust nor do they contend there was any irregularity in the foreclosure proceedings or in the deed to defendant given pursuant thereto. While the allegations of the complaint are not altogether clear, from a liberal construction it appears that plaintiffs seek to proceed in this case upon either of two grounds: (1) That defendant breached an agreement, which plaintiffs allege was made by the trustee in the deed of trust acting as defendant's agent, by which defendant was to purchase the note secured by the deed of trust and give plaintiffs additional time to pay the remaining indebtedness, if plaintiffs would make an immediate payment of $1,000.00 to be applied on the accrued foreclosure expenses and in reduction of the debt; and (2) that prior to taking title, defendant agreed with plaintiffs "to convey to them an option" to purchase the real property involved. The complaint also contains an allegation that "the defendant thereafter failed and refused to comply with his agreement and the plaintiffs refrained, in consideration of said agreement, to take any further action with regard to the aforesaid foreclosure proceedings solely upon the representations of the defendant and his agent" and "the defendant and his said agent have fraudulently deprived these plaintiffs of their property." At the close of plaintiffs' evidence the trial judge entered judgment of nonsuit, finding the evidence insufficient to submit to the jury under any theory of the case embraced within the allegations of the complaint. We agree.

[1]    Plaintiffs' evidence, even when considered in the light most favorable to them, as we are required to do in passing upon motion for nonsuit, is insufficient to support a finding that defendant had agreed to purchase the note and grant plaintiffs additional time to pay their indebtedness. Indeed, plaintiffs' evidence more nearly negatives any such agreement. Plaintiffs do not contend, and nothing in their evidence indicates, that there was any connection whatsoever between defendant and the owner of the note which was secured by the deed of trust. Plaintiffs admit that the note was past due and unpaid. The male plaintiff testified that the trustee in the deed of trust got in touch with plaintiffs and demanded that they "settle the

mortgage or it would be put up for sale." He further testified that the trustee had discussed a proposal for development of the property on a participating basis with the owner of the indebtedness, which proposal the plaintiffs had found unacceptable. The male plaintiff then testified:

"At that time he [referring to Mr. Denning, the trustee in the deed of trust] did not immediately mention anything about Mr. McLean being in this. As a matter of fact I was placed in the position of begging this man for my property and giving me enough time to pay it off, but he said, 'I have another proposition', and discussed a gentleman by the name of Charles McLean, I never met the man before. I met him in the courtroom today. I think he was talking about the defendant Charles A. McLean, I can't positively identify him. With regard to what he said about the Charles A. McLean transaction, he said, 'I am representing Mr. McLean, or will be in the near future'. I said, 'Now, I would like to define in the near future, now, tomorrow, next week or when'. He said, 'A few days', and I said, 'What is the proposition'. He said, 'Maybe I can get it if you send a thousand dollars, I will allow you a certain time to pay it off, but one thousand dollars must get here by a certain date', it was some time in March. I went to the Bank and borrowed the money — I have a record here and mailed it to Mr. Denning. Yes, this Plaintiffs' Exhibit No. 1 is the check I signed and sent after I talked to Mr. Denning. I mailed it registered mail. I wrote a letter. My wife signed the letter. Yes, that letter that is marked Defendant's Exhibit for identification No. 1 is the letter. Yes, in that letter I told him we were sending him the check. The check was to get a new mortgage written up with this one thousand dollars as a down payment. That check had to do with this property in Burlington. He said for me to send the thousand dollars and he would have them call off the sale. Yes, the purpose then was to call off the sale for one thousand dollars. The thousand dollars was sent to me ten or twelve days later with a letter stating that he could not get Mr. McLean to go through with the deal. After that time I retained a counsel in New York by the name of William C. Rains and asked him whether he could stop the sale of the property until we could come down here and borrow some money and re-write a new mortgage. On the confidence of the attorney, nothing occurred, the property was sold."

This testimony completely negatives, rather than supports, the first theory of plaintiffs' case as alleged in their complaint.

**[2, 3]**   In their brief on this appeal plaintiffs lay primary stress upon their contention that a resulting trust for their benefit was created when defendant purchased at the foreclosure sale. It is true that, as stated in 7 Strong, N.C. Index 2d, Trusts, § 13, p. 422, "[a] parol agreement to purchase at a foreclosure or judicial sale and hold the title for the debtor, and to reconvey the legal title to the debtor upon repayment of the amount advanced, creates a resulting trust, provided the agreement is made at or before the time the legal estate passes. Such an agreement need not be supported by a consideration, but may be enforced against a mere volunteer." However, plaintiffs' proof, again viewed in the light most favorable to them, fails to furnish any basis to support a jury finding that any such agreement existed between them and defendant. The male plaintiff testified:

> "True, I had knowledge that the property was going to be sold at the courthouse door. I had knowledge it was to be sold the first time. I don't recall the second time. Yes, after the first sale I talked to Mrs. Clayton, my wife's sister, after my attorney in New York said that the only way we could get the property back was to have someone place an upset bid. I said, 'Now, wait a minute, I have an agreement, why this upset bid', and the sister said, 'Now look, I will do what I can to save you, I will go ahead on my own and place this bid', and she went ahead. I want to get this clear, the attorney was working in this matter and I placed confidence in this attorney. Yes, the attorney informed me that my sister-in-law upset the bid. No, after the bid was upset, I did not know this land would be sold again and the date it would be sold. I didn't know it would be sold the second time until some time later. My understanding after an upset bid was placed on the land was that the attorney Rains would come down and give sufficient time to get the money from Greensboro and pay off the indebtedness on the property."

**[3-5]**   Plaintiffs' evidence completely fails to furnish any proper basis for establishing a resulting trust in their favor in this case. Indeed, plaintiffs did not allege that defendant had made any such express agreement to acquire and hold title for their benefit as would be required to give rise to a resulting trust. They alleged merely that he agreed "to convey to them an option" to repurchase. This would be insufficient to charge defendant as trustee or to impress a trust upon his title. *Gunter v. Gunter,* 230 N.C. 662, 55 S.E. 2d 81. "To create a parol trust there must be an agreement amounting to an undertaking to act as agent in the purchase and constituting a covenant to stand seized to the use or benefit of another." *Wolfe v. Land Bank,* 219 N.C. 313, 13 S.E. 2d 533. Plaintiffs' evidence in this

case, rather than tending to establish, actually tends to negative any such agreement. Defendant was the successful bidder at both sales; if there had been any agreement that he was acting in order to acquire and hold title for plaintiffs' benefit, no upset bid to cause a second sale would have been necessary. Defendant's motion for nonsuit was properly allowed.

Appellants' remaining assignments of error relate to the trial court's rulings excluding certain evidence. Several of these relate to conversations between the feme plaintiff and defendant which the witness testified occurred long prior to the commencement of the foreclosure proceedings. None of the excluded evidence was relevant to any issue in this case, and no prejudicial error was committed in excluding it.

Affirmed.

MALLARD, C.J., and BRITT, J., concur.